UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTONEUM NORTH AMERICA, INC.
a Delaware Corporation,

Case No. 2:18-cv-11741
Hon.

Plaintiff,

v.

INVISTA S.Á.R.L.
a Foreign Limited Liability Company,

Defendant.

---

**COMPLAINT FOR SPECIFIC PERFORMANCE, OR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DAMAGES**

Plaintiff Autoneum North America, Inc. ("Autoneum") for its Complaint against Defendant Invista S.á.r.l ("Invista") states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Autoneum is a Delaware corporation with a principal place of business in Novi, Michigan.

2. Upon information and belief, Invista is a limited liability company organized under the laws of Luxembourg with a principal place of business in Wichita, Kansas.

1

3. There is a basis for general and limited personal jurisdiction because Invista carries on a continuous and systematic part of its general business in Michigan.

4. Venue is proper because Invista regularly conducts business in this District and a substantial amount of the activity giving rise to this action took place in this District. Also, under § 18.10 of the T&C (defined below), the parties agreed that any action "shall be brought only in a court of competent jurisdiction sitting in Oakland County, Michigan, or in the United States District Court for the Eastern District of Michigan, Southern Division."

5. The amount in controversy exceeds $75,000, exclusive of interest, costs or attorney's fees.

6. Declaratory relief is authorized by Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

7. This matter is one wholly between citizens of different states and this Court has original jurisdiction by virtue of 28 U.S.C. § 1332.

## GENERAL ALLEGATIONS

**The Yarn, Flooring, and the Contracts**

8. For more than 12 years, Invista has supplied Autoneum with its requirements of white nylon 6.6 yarn (the "Yarn"). Invista is Autoneum's sole supplier of the Yarn and, to Autoneum's knowledge, is the only supplier of the Yarn for the automotive industry in the United States.

9. Effective January 1, 2014, Autoneum entered into two Scheduling Agreements with Invista requiring Invista to supply Autoneum with its requirements of two different types of the Yarn. **Ex. 1**, Scheduling Agreement No. 5500001317; **Ex. 2**, Scheduling Agreement No. 5500001320 (collectively, "the Contracts").

10. Scheduling Agreement No. 5500001317 was first sent to Invista on September 1, 2014 (**Ex. 1-A**).

11. Scheduling Agreement No. 5500001320 was first sent to Invista on September 2, 2014 (**Ex. 2-A**).

12. The Contracts include Autoneum's General Terms and Conditions of Purchase (the "T&C"). Section 1.2(a) of the T&C makes clear that the supplier accepts the T&C by, among other ways, "perform[ance], including delivering and rendering any of the [g]oods to

3

Purchaser that are the subject of the Scheduling Agreement or Scheduling Agreement Release." Section 1.2(a) further provides that "[a]cceptance is expressly limited to the terms of the Contract. Any additional or different terms proposed by the Supplier are deemed material and are objected to and expressly rejected by the Purchaser, and the Contract shall be deemed accepted without Supplier's additional or different terms." And, Section 1.2(b) provides that "Supplier and Purchaser, may, however agree to additional or different terms, but only in a physically signed writing ("Signed Writing") by an authorized Purchaser representative. In the absence of such, all conditions or terms of the Supplier are rejected, no matter how communicated by the Supplier."

13.  Since 2014, Invista's invoices referenced the Contracts. *Id.*, Autoneum's T&C.

14.  Scheduling Agreement 5500001317 was updated (and issued to Invista) on March 21, 2017 (**Ex. 1-B**) and January 31, 2018 (**Ex. 1-C**).

15.  Scheduling Agreement 5500001320 was updated (and issued to Invista) on January 4, 2016 (**Ex. 2-B**), September 28, 2016 (**Ex. 2-C**), March 21, 2017 (**Ex. 2-D**) and January 31, 2018 (**Ex. 2-E**).

4

16.     Invista is the only supplier approved by Autoneum and its customers to supply the Yarn. The Yarn is the only material approved to make the Flooring (as defined below).

**The Supply Chain**

17.     Under the Contracts, Invista's plant in Kennesaw, Georgia makes daily deliveries of the Yarn, covered by Scheduling Agreement No. 5500001320, to Autoneum's plant in Bloomsburg, Pennsylvania. With respect to the Yarn covered by PO 5500001317, Invista makes approximately 2-3 deliveries per month to Autoneum's Bloomsburg plant. Autoneum then uses the Yarn to manufacture carpeting products that total more than 450 finished goods used in current production and other spare and service parts (the "Flooring").

18.     Autoneum supplies the Flooring to approximately 14 different customers, including include five Original Equipment Manufacturer Customers: Fiat Chrysler Automobiles US LLC, Ford Motor Company, Toyota Motor Corporation, General Motors, LLC, and Volkswagen (collectively, "Autoneum's Customers").

19.     Collectively, Autoneum's Customers use the Flooring supplied by Autoneum on over 21 different vehicles which include, among others: FCA – Jeep Cherokee, Jeep Grand Cherokee, Dodge Challenger, Durango, Charger, and Chrysler 300; Ford - Lincoln MKT, MKC, MKZ, MKS and MKX, Edge ST, Fusion, Flex, and Expedition; Toyota – Highlander, RAV 4, and Lexus ES; GM – Chevrolet Malibu and Camaro; VW - Passat (collectively, the "Vehicles").

20.     Thus, in summary, the supply flow graphically appears as follows:

Invista → the Yarn → Autoneum → Flooring → OEM Customers → Vehicles → Consumers.

21.     Autoneum cannot make the Flooring without the Yarn supplied by Invista.

22.     Autoneum's Customers cannot make the Vehicles without the Flooring supplied by Autoneum.

**Invista conditions further shipment on a  
$4.4 million price increase over four months**

23.     On December 8, 2017, Invista's Business Manager for automotive flooring, John Crowder, sent a letter to Autoneum's then-Purchasing Manager, Ron Hostinksy, stating, among other things, that

6

Invista would "maintain the current pricing of $REDACTED / kg for 1000-611 and $REDACTED / kg for 1405-608."

24. On February 26, 2018,[1] Invista's Vice President, Marc Ahrens, e-mailed Autoneum's Vice President of Purchasing, Marcos Tonndorf, asking for a meeting to "discuss options on supply that are win/win for both Autoneum and Invista."

25. After more back and forth, the parties agreed to meet on March 15. But Invista later canceled that meeting.

26. After Invista canceled the March 15th meeting, on March 8, Invista's Mr. Crowder e-mailed Autoneum's Purchasing Coordinator, Kristen Morris, asking for dates that Autoneum's Purchasing Director Daniel Collings and Mr. Tonndorf could meet with Invista.

27. Mr. Tonndorf responded to Mr. Crowder on March 14 asking for an agenda if the meeting were to take place in Kennesaw, Georgia. Mr. Crowder responded that day: "[t]he agenda would be to discuss what both sides are looking for to continue with Invista as your sole/primary source of piece dyed yarn."

---

[1] Unless stated otherwise, all dates referenced after this paragraph occurred in 2018.

28.     On March 22, Mr. Crowder followed up in an e-mail stating that Invista preferred that the meeting take place at its facility in Kennesaw, Georgia. Autoneum's Ms. Morris responded that day, informing Mr. Crowder that while Mr. Collings and Mr. Tonndorf were booked for the next few weeks, they could meet with Invista on April 23 or 24. Mr. Crowder replied on March 26 stating that April 24 would work best for Invista for a meeting at its facility.

29.     Then, just three days later, on March 29, Invista's Director of Sales & Business Development, Kip Kimball, e-mailed Mr. Tonndorf asking to schedule a telephone conference call "to discuss imminent pricing changes."

30.     Invista's Mr. Crowder and Mr. Kimball and Autoneum's Mr. Tonndorf had a conference call on April 13. Invista immediately followed up that call with a letter communicating 1) that, effective *immediately*, Invista was imposing a $REDACTED / kg, *75% price increase* for all products it supplied Autoneum and 2) its desire to end its business relationship with Autoneum 45 days later – May 28.

31.     Invista's demanded price increase would result in a total impact to Autoneum of over $4,400,000 over the following four months.

32. On April 24, Autoneum's Mr. Collings and Mr. Tonndorf met with Mr. Crowder and Mr. Kimball at Invista's facility in Kennesaw, Georgia. At this meeting, Mr. Tonndorf stated that: a) Autoneum would attempt to transition how it makes Flooring from using the Yarn supplied by Invista to using alternative materials supplied by other suppliers; b) even if a full transition were possible, Autoneum would need much more time than 45 days to develop new materials; and c) Autoneum would follow up as soon as it could with a proposed timeline of how quickly it could transition to the use of alternative materials.

33. On May 4, Invista e-mailed to Autoneum an entirely new draft "sales agreement" that conditioned further delivery on, among other things, the previously demanded higher prices with the ability to increase pricing further, required fixed quantities, accelerated payment terms and acceptance of Invista's terms and conditions.

34. Over the following three weeks, Autoneum worked diligently and invested a significant amount of resources to develop new materials and locate alternate suppliers. It believes that it may be able to complete a transition to the new material and new suppliers as early as mid-August 2018.

35. On May 21, reserving all of its rights under the Contracts, Autoneum communicated to Invista its plan to develop new materials and transition supply on an expedited basis and requested that Invista continue to supply under the Contracts.

36. Invista responded the following day, May 22, again requesting that Autoneum sign the agreement that Invista sent on May 4.

37. The next day, May 23, Invista confirmed in a telephone conference that it would cease supply effective May 28 unless Autoneum agreed to the terms in Invista's sales agreement.

38. On May 23, Autoneum, through its outside counsel, wrote to Invista, again explaining that a) Autoneum could not move any faster to develop, and locate sources of, alternative materials, ensure that those suppliers and new materials are capable of meeting Autoneum's standards regarding quality and quantity, gain its customers' approvals regarding color, and meet all of its Customers' stringent Production Part Approval Process ("PPAP") and validation requirements necessary in order to transition supply which impacts more than 450 finished goods, five OEMs and 21 different Vehicles and b) Autoneum would not enter into a new supply agreement for the Yarn that Invista was already obligated to supply under the

Contracts. Autoneum concluded this letter by demanding that Invista assure Autoneum that it would continue supply of Yarn in accordance with the terms of the Contracts.

39. After receiving Autoneum's demand for assurances, Invista agreed to continue delivery through June 1, to allow the parties time to talk again and try to reach resolution and to give Invista additional time to respond to Autoneum's demand for assurances.

40. Ultimately, the parties were not able reach resolution. On May 30, Invista, through its outside counsel, responded to Autoneum's demand for assurances with a letter that, among other things, conditions supply of Yarn after June 1 on Autoneum paying the previously demanded higher pricing, and at cash-in-advance or cash-on-demand payment terms.

41. Even if Autoneum were able to complete a transition to alternate materials and suppliers by mid-August, Invista's pricing demands will have a total impact of over $4.4 million through the middle of August.

**The Ramifications of Invista's Decision to Stop Shipping the Yarn**

42. If Invista follows through on its threat and refuses to make shipments of the Yarn after June 1, Autoneum will run out of the Yarn as early as 10 -11 days later, and be forced to cease production of Flooring.

43. Developing alternative materials, and sources for those alternative materials, to use to make the Flooring is a complex and monumental task.

44. Even if Autoneum were successful at developing replacement materials for use in the Flooring, able to obtain the quantities it requires of replacement materials, and all of Autoneum's Customers consent to the use of such replacement materials, it would take Autoneum at least ten to eleven more weeks before Autoneum no longer requires the Yarn from Invista. In addition, if at any point the complex transition process does not proceed as planned, Autoneum may require additional quantities of the Yarn. Given the imminent shutdown of Autoneum's Flooring manufacture, it is technically and logistically infeasible, and literally impossible, for Autoneum to make a cover purchase to avoid a widespread shutdown.

45. The Flooring must meet demanding specifications before it can be used in the Vehicles. Numerous tests must be run to validate and

qualify the Flooring. Any change in the material used to make that Flooring requires that Autoneum go through an extensive testing and evaluation process including obtaining color approval and going through PPAP. In addition, it requires changes to Autoneum's manufacturing operations.

46. Autoneum cannot obtain alternative materials from alternative suppliers in time to avoid catastrophic interruptions of its production operations and the shutdown of its Flooring assembly. If Invista does not continue shipments of the Yarn, Autoneum estimates that its Customers' production will be interrupted beginning Monday, June 18.

47. A shutdown of the operations of Autoneum's and its Customers' operations will result in damages that could exceed millions of dollars per day. A shutdown could potentially subject Autoneum (and Invista) to liability for several million dollars in damages per day.

48. Also, hundreds of other automotive suppliers, ranging from large Tier One Fortune 100 corporations to smaller suppliers to the automotive industry could be adversely affected because production of the Vehicles, which incorporate the Flooring, will be halted leading to significant additional damages.

49. Invista knows that Autoneum is vulnerable to Invista because Autoneum needs the Yarn: Autoneum cannot locate and develop alternate material suppliers in time to avoid irreparable harm caused by Autoneum's and its Customers' operation shutdowns and is using that leverage to hold the Yarn "hostage" to coerce Autoneum into agreeing to Invista's demands.

50. If Invista were allowed to carry out its threat and cease supply of Yarn, Autoneum would be unable to obtain alternative materials from alternative sources on a timely basis so as to avoid an interruption of production, resulting in a production stoppage and the idling of potentially thousands of employees of Autoneum, its Customers, and the supply chains that feed the assembly lines for the Flooring and Vehicles.

51. Such plant shutdowns will also cause Autoneum to suffer a loss of customer relations and goodwill. In addition, Autoneum's Customers will also suffer a loss of customer relations and goodwill as a result of their inability to deliver the Vehicles ordered by their customers.

52. Autoneum cannot make the Flooring for the Vehicles without the Yarn supplied by Invista.

53. Autoneum has complied in good faith with all of its known contractual obligations to Invista, and is working in good faith to finish developing alternate materials made by alternate sources to allow it to continue to make the Flooring.

## COUNT I
## BREACH OF CONTRACT / SPECIFIC PERFORMANCE – MCL § 440.2716

54. Autoneum incorporates its preceding allegations by reference.

55. The Contracts are valid and binding and require Invista to fulfill Autoneum's requirements for the Yarn for the entire duration of the Contracts.

56. Autoneum has satisfied all of its contractual obligations to Invista under the Contracts.

57. As indicated by the factual allegations detailed above, Invista materially breached its duties and contractual obligations to Autoneum by refusing to continue performance after June 1, 2018.

58. Invista also materially breached its duties and contractual obligations by failing to provide written assurances of future supply of Yarn under the Contracts.

59. As indicated by the factual allegations detailed above, Autoneum informed Invista of its breaches and demanded adequate assurances of future performance by letter dated May 23, 2018.

60. Invista failed to provide adequate assurance of its performance.

61. Autoneum requests that this Court order Invista to continue to supply the Yarn under the Contracts.

62. If Invista does not perform its obligations under the Contracts, Autoneum will be forced to incur additional significant costs and expenses associated with the use of cover yarn from alternate suppliers.

63. In addition, Autoneum's manufacturing operations and the manufacturing operations of its Customers may be shut down because the Yarn supplied by Invista is unique and, if Invista does not continue delivery, Autoneum will not be able to obtain alternate material in time to meet its Customers' demands.

64. Autoneum is entitled to specific performance because the Yarn is a unique good. MCL § 440.2716.

65. Autoneum is also entitled to recover from Invista the difference between the cost of cover and the Contracts' prices over the terms of the Contracts, the costs incurred with respect to developing new product and

resourcing and all other compensatory, incidental and consequential damages occasioned by Invista's breach or anticipated breach and allowed by law (MCL § 440.2711 and 440.2712(2)) and the Contracts.

66. Autoneum is also entitled to recover from Invista Autoneum's attorneys' fees and costs per See Section 18.4 of the T&C (providing that Invista must pay to Autoneum "all reasonable costs and expenses incurred" with enforcing its rights under the Contracts).

## COUNT II
## DECLARATORY JUDGMENT

67. Autoneum incorporates its preceding allegations by reference.

68. The parties dispute their respective rights under the Contracts.

69. An actual controversy exists between the parties regarding their respective rights under the Contracts sufficient to warrant the Court declaring the rights of the parties.

70. Autoneum is entitled to a declaration that it has not materially breached, and is not currently breaching, any provision of the Contracts.

71. Autoneum is entitled to a declaration that Invista is obligated to perform all of its obligations and commitments to Autoneum under the terms of the Contracts, including the obligation to provide Autoneum with its requirements of the Yarn.

72. An actual controversy now exists between Autoneum and Invista as to whether or not there has been a material breach, and it is within the jurisdiction of this Court, under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 to render a declaratory judgment as to the parties' respective rights.

73. Autoneum is entitled to an order requiring Invista to specifically perform the Contracts and provide it with its requirements of the Yarn.

## COUNT III
## REPUDIATION OF REQUIREMENTS CONTRACTS

74. Autoneum incorporates its preceding allegations by reference.

75. Invista's failure to provide assurances of performance and written communication that it will satisfy Autoneum's requirements for the Yarn under the Contracts and to perform its contractual obligations constitutes a blatant, unreasonable and bad faith repudiation of the Contracts.

76. Invista's failure to provide assurances of performance and to perform its contractual obligations substantially impairs the value of the Contracts to Autoneum. Consequently, Invista repudiated the Contracts under MCL § 440.2610 and the common law.

77. Autoneum is entitled to recover from Invista the difference between the cost of cover and the Contracts' prices over the terms of the Contracts, the costs incurred with developing new product and resourcing and all other compensatory, incidental and consequential damages occasioned by Invista's repudiation and allowed by law (MCL § 440.2711 and 440.2712(2)) and the Contracts including Autoneum's reasonable attorney fees and costs, under Section 18.4 of the T&C.

## PRAYER FOR RELIEF

**WHEREFORE**, Autoneum requests that this Court order as follows:

A. Specific performance under MCL § 440.2716;

B. Declaratory relief under 28 U.S.C. §§2201 and 2202 and Fed. R. Civ. P. 57 that Invista has anticipatorily and in bad faith repudiated its obligations under the Contracts;

C. Declaratory relief under 28 U.S.C. §§2201 and 2202 and Fed. R. Civ. P. 57 that Autoneum has not materially breached, and is not currently breaching, any provision of the Contracts;

D. Temporary, preliminary and permanent mandatory injunctive relief, under Fed. R. Civ. P. 65, preventing Invista from taking any action inconsistent with its supply obligations to Autoneum;

E. Temporary, preliminary and permanent mandatory injunctive relief, under Fed. R. Civ. P. 65, requiring Invista to supply Autoneum with necessary quantities of the Yarn to satisfy Autoneum's requirements under the Contracts throughout the

      duration of the Contracts or, at minimum, until such time as Autoneum needs to develop new products and resource to an alternate supplier(s);

F.     In addition, or in the alternative, an award of money damages in favor of Autoneum sufficient to compensate it for all forms of economic loss, including without limitation, direct damages, coverage damages, incidental damages, consequential damages, lost profits, lost goodwill and other costs incident to having to develop, locate and secure alternate materials and sources of supply;

G.    An award of legal fees and other costs arising out of Invista's failure to perform under the Contracts; and

H.    All such other relief as this Court may deem just, equitable or appropriate under the circumstances.

Respectfully submitted,

Dated: June 1, 2018

/s/Brent W. Warner
Daniel N. Sharkey (P53837)
Brent W. Warner (P67733)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 971-1800
warner@bwst-law.com
Attorneys for Plaintiff
Autoneum North America, Inc.